**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**DAN DEWAYNE NEWCOMB** **PLAINTIFF**

**v.** **No. 4:20CV105-GHD-RP**

**TOMMY TAYLOR, ET AL.** **DEFENDANTS**

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Dan DeWayne Newcomb, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff alleges that living conditions at the Mississippi State Penitentiary violated the Eighth Amendment prohibition against cruel and unusual punishment. The defendants have moved [58] for summary judgment; the plaintiff has responded [61], [64] to the motion, and the matter is ripe for resolution. For the reasons set forth below, the defendants' motion [58] will be granted, and the case will be dismissed with prejudice.

**Allegations and Procedural Posture**

At the time of filing his complaint, Newcomb was a convicted inmate in the custody of the Mississippi Department of Corrections ("MDOC") incarcerated at the Mississippi State Penitentiary ("MSP") in Parchman, Mississippi. Doc. 1. He sued the defendants, alleging unconstitutional conditions of confinement while he was incarcerated at MSP. He claims that MSP Unit 30 suffered from broken toilets, showers, holes in the floors, brown/smelly water, and mold. *Id.* at 4-5. Newcomb

has not alleged injury. Instead, he claims that the prison conditions subjected him to risks of imminent harm. *Id.* at 6. He also complains that the grievance procedures at Parchman are flawed and designed to frustrate and block inmates' efforts to address or seek remedies when conditions violate health, safety, and security standards. *Id.* at 5-6.

Mr. Newcomb requests that the court order the defendants to develop a plan to eliminate the risks of serious harm he suffers due to the dangerous, filthy conditions. *Id.* at 7.[1] He also requests that the ARP policy and procedure at Parchman be reviewed and, if the court finds that the procedures are lacking, order the necessary corrections. *Id.* Newcomb finally requests compensatory and punitive damages in a fair and reasonable amount. *Id.*

Newcomb is suing two defendants – former Interim MDOC Commissioner Tommy Taylor and Timothy Morris (Superintendent of MSP) – in their official capacities only. *Id.* Newcomb is suing Richard Pennington as Director of the Administrative Remedy Program ("ARP") in both his official and individual capacity. *Id.* He has also named the Mississippi Department of Corrections as a defendant.

**Summary Judgment Standard**

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[1] On September 23, 2021, Newcomb was moved to a newly remodeled Unit 30 "A" Building, A Zone, Bed 32. Because of this move, he has requested dismissal of his first requested remedy - that the defendants develop a plan to eliminate the risks of serious harm he suffers due to the dangerous, filthy conditions. Doc. 56.

matter of law." FED. R. CIV. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998).

Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992).

The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of

proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

**Eleventh Amendment Immunity: Claims Against MDOC and Defendants in Their Official Capacities**

Sovereign immunity, as reflected in the Eleventh Amendment, precludes suits brought by private citizens against states in federal courts unless the State has waived its immunity. U.S. Const. amend. XI; *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001). Congress did not abrogate Eleventh Amendment immunity in enacting § 1983. *Quern v. Jordan*, 440 U.S. 332, 341 (1979). In addition, Mississippi has not waived its right to sovereign immunity. *See* Miss. Code Ann. § 11-46-5(4) ("Nothing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States.")

Sovereign immunity extends to any state agency or department deemed to be an "arm of the state." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326–27 (5th Cir. 2002); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (the Eleventh Amendment bars a federal court suit naming "the State or one of its agencies or departments as the defendant"). The Mississippi Department of Corrections ("MDOC") is an arm of the State of Mississippi and thus cloaked with Eleventh Amendment immunity from suit. *See Williams v. Mississippi Dep't of Corr.*, No. 3:12CV259-CWR-FKB, 2012 WL 2052101, at *1–2 (S.D. Miss. June 6, 2012) ("MDOC is considered an arm of the State of Mississippi" and is immune under the Eleventh Amendment); *Dandridge v. Mississippi*, No. CIV.A 208CV229KSMTP, 2009 WL 4940105 (S.D. Miss. Dec. 14, 2009), No. Dandridge v. Mississippi, No. CIV.A 208CV229KSMTP, 2009 WL 4940105, at *7 (S.D. Miss. Dec. 14, 2009) (same).

As MDOC is an arm of the state, its officers and employees are also officers of the state in their official capacities. They are entitled to sovereign immunity from monetary damages in their official capacities. *See Am. Bank & Tr. Co. of Opelousas v. Dent*, 982 F.2d 917, 921 (5th Cir. 1993) (*citing Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)) ("a suit against a state official in his or her official capacity ... is no different from a suit against the State itself.").

One exception exists for suits against state officials in their official capacities for prospective injunctive relief only. In *Ex parte Young*, the Supreme Court recognized a narrow exception to Eleventh Amendment immunity which allows a state official to be sued for injunctive relief in his official capacity. 209 U.S. 123, 159–160 (1908). In the instant case Mr. Newcomb is no longer seeking prospective injunctive relief, as he has been moved to a remodeled area of the prison. The *Young* exception is thus inapplicable, and all official capacity claims against MDOC, Taylor, Morris and Pennington will be dismissed. In addition, as Newcomb has sued Taylor and Morris only in their official capacities, they will be dismissed with prejudice from this lawsuit because they are immune from suit.

**Qualified Immunity**

Defendant Pennington has raised the defense of qualified immunity as a shield from liability in this case. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To overcome the qualified immunity defense, a plaintiff must meet a two-pronged test. He must first allege a violation of a clearly established constitutional right. *Wilkerson v. Stalder*, 329 F.3d 431, 434 (5th Cir. 2003); *Heitschmidt v. City of Houston*, 161 F.3d 834, 836–37 (5th Cir.1998). "To be 'clearly

established' for purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Johnson v. Johnson*, 385 F.3d 503, 524 (5th Cir. 2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). In addition to alleging the violation of a clearly established constitutional right, a plaintiff must also allege facts showing that the defendant's conduct was objectively unreasonable in the light of the law established at the time of the incident. *Heitschmidt*, 161 F.3d at 836–37. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

**Claims Against Richard Pennington as Director of the ARP in His Individual Capacity**

Mr. Newcomb has also sued Richard Pennington in his individual capacity. As Pennington is the director of the ARP, he has no nexus with Newcomb's claims regarding the conditions in Unit 30. He raises an individual capacity claim against Pennington – that the ARP grievance procedures are ineffective. Newcomb has not demonstrated a violation of clearly established law in this case. A government defendant violates clearly established law "when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (*quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). To find that the law was clearly established, "[the court] must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (brackets and internal quotation marks omitted) (quoting *Ashcroft*, 563 U.S. at 741). There need not be a case "directly on

point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741.

Before filing suit, Newcomb submitted a grievance with the ARP program on August 29, 2018 (ARP# MSP-20-403.) *See* Exhibit "A."[2] In that grievance, he complained of broken toilets, leaking sinks, broken showers, broken shower tiles, moldy showers, unlit exit signs, broken light fixtures and exposed light fixtures. *Id.* at MDOC-NEWCOMB-000003-000004. Newcomb requested that MDOC follow standards of inspection and ensuring basic human needs. *Id.* at MDOC-NEWCOMB-000005. He also requested that MDOC conduct reasonable and timely follow-up and execution of maintenance needs and establish procedures for responding to threatening conditions to "heat sensitive inmates." *Id.* Newcomb supplemented the ARP with a claim that the drinking water in Unit 30 was not safe to drink, often having a chemical taste. *Id.* at MDOC-NEWCOMB-000008. He requested that the water be made safe to drink. *Id.*

Mr. Newcomb alleges that ARP# MSP-20-403 was put on backlog under MDOC policy. Doc. 1, PageID. 3. Once the backlog was cleared, the ARP grievance was accepted on March 3, 2020. *See* Exhibit "A" at MDOC-NEWCOMB-000002. On the First Step Response Form, Deputy Warden Flag responded that maintenance had repaired some, if not all, of the conditions and that repairs were ongoing. *Id.* at MDOC-NEWCOMB-000010. Deputy Warden Flag also advised Newcomb that the water was tested quarterly by the Health Department and was safe to drink. *Id.* On April 10, 2020, Newcomb replied that he was not satisfied with the response, complaining that the repairs took too long and that the ARP process was broken. *Id.* at MDOC-NEWCOMB-000012. In the Second Step Response

---

[2] The exhibits referenced in this memorandum opinion may be found attached to the defendants' motion for summary judgment.

Form, Superintendent Marshall Turner again advised Newcomb that maintenance has been working and had corrected most of the issues addressed in the grievance – and that the Health Department tested the water quarterly as recommended by the state. *Id.* at MDOC-NEWCOMB-000013. Having exhausted his administrative remedies, Newcomb then filed the instant suit on June 12, 2020.

In his complaint, Newcomb alleges that the ARP procedure at Parchman is flawed and designed to frustrate or block inmates from seeking remedies regarding health, safety, and security issues. Doc. 1, PageID. 3-4. Though his specific problem with the procedure is unclear, it appears that he challenges the backlog policy that caused ARP# MSP-20-403 grievance to be delayed. Doc. 1, PageID. 3-4, 11-18. He also claims that MSP did not follow its own grievance procedures.

As to backlogging, the procedure, as applied by a prison's administrative remedy program, is constitutional. *Wilson v. Epps*, 776 F.3d 296, 300 (5th Cir. 2015); *Wilson v. Boise*, 252 F.3d 1356 (5th Cir. 2001) (unpublished). As such, the Newcomb's claim regarding backlogging is without substantive merit.

In addition, Newcomb does not have a federally protected liberty interest in having his prison grievances resolved to his satisfaction. *Geiger v. Jowers*, 404 F.3d 371, 373–74 (5th Cir. 2005). "[A] prisoner has a liberty interest only in 'freedom[s] from restraint . . . impos[ing] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* at 374 (quoting Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir. 1995)). MDOC's failure to follow its own institutional ARP policies or procedures in processing Newcomb's ARP claims does not rise to the level of a constitutional claim. *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (holding that "a prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met"); *see also Geiger*, 404 F.3d at 373–74.

Mr. Newcomb filed his grievance; it was put in queue, and, once it cleared the backlog of his other grievances, he pursued the process to completion (thus exhausting his administrative remedies). Mr. Newcomb's claim regarding the processing of his grievances, without more, is not cognizable under 42 U.S.C. § 1983, as it does not rise to the level of a constitutional violation. *Martinez v. State of Cal.*, 444 U.S. 277, 283 (1980) (to state a claim under § 1983, a plaintiff must have been deprived of a right secured by the constitution and laws of the United States). As his claim is not valid, he has not shown the violation of a clearly established constitutional right; nor has he shown that defendant Pennington's conduct was objectively unreasonable in administering the ARP grievance program. Certainly, he has not shown that Pennington is "plainly incompetent" or that he "knowingly violate[d] the law." *Malley*, 475 U.S. at 341. As such, defendant Pennington is cloaked with qualified immunity, and he must be dismissed with prejudice from this suit.

**Conclusion**

For the reasons set forth above, each defendant is cloaked in either Eleventh Amendment or qualified immunity. The motion by the defendants for summary judgment will be granted, and the instant case will be dismissed with prejudice.

**SO ORDERED**, this, the 16th day of May, 2022.

Glen H Davidson

SENIOR JUDGE